UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON  - SEATTLE DIVISION

| | |
|---|---|
| In Re:<br><br>Nazario Hernandez<br><br>     Appellant(s),<br><br>V<br><br>Franklin Credit Management Copr. and<br>Deutsche Bank National Company as Trustee<br>For Bosco Credit II Trust Series 2010-1,<br><br>     Appellee(s). | Case No.: 2:19-cv-00207-JCC<br><br>CHAPTER 13<br><br>**REPLY TO RESPONSE TO AMENDED MOTION FOR STAYPENDING APPEAL**<br><br>Noted on Motion Calendar for:<br><br>December 13, 2019 |

       Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1 and its servicer, Franklin Credit Management Corp. ("Movant") hereby submits the following Reply to Response to Amended Motion for Stay Pending Appeal. Movant requests a stay of all actions in the District Court matter specifically the entry of an order on the Motion for Attorneys' fees.

*////*

Reply– Page 1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### A.  FRBP 8007 GIVES THE COURT BROAD DISCRETION TO GRANT STAY,

3

### INJUNCTION, OR OTHER ORDER TO AVOID UNJUST RESULTS

4

Federal Rule of Bankruptcy Procedure 8007(a)(1) allows a stay of a judgment, order,

5

or decree while an appeal is pending.  "In determining whether to grant a stay pending appeal,

6

the Court considers the following four factors: (1) whether the stay applicant has made a

7

strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

8

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

9

other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v.*

10

*Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 1756, 173 L. Ed. 2d 550 (2009); *In re Gardens*

11

*Reg'l Hosp. & Med. Ctr., Inc.,* 567 B.R. 820, 830 (Bankr. C.D. Cal. 2017), <u>appeal dismissed,</u>

12

No. 2:16-BK-17463-ER, 2018 WL 1229989 (C.D. Cal. Jan. 19, 2018).

13

### 1.  Movant is likely to succeed on the merits of its appeal.

14

In the Opposition, Plaintiff claims that Movant abandoned the argument that the part of

15

*Edmundson v. Bank of America,* 378 P.3d 272 (Wash. Ct. App. 2016) regarding the loan

16

payments no longer being due after the Bankruptcy discharge is dicta.  This is false.  The

17

Opening Brief dedicates five (5) pages to this argument.  Attached hereto is a true and correct

18

copy of the Opening Brief as **Exhibit "1"**.  In that portion of the Opening Brief, Movant

19

provides an extensive analysis of why *Edmundson* did not find that the last payment on a loan

20

is due with the payment immediately before a Bankruptcy discharge.  This concept is not

21

consistent with the remainder of the Court's analysis or holding.  Throughout the decision, the

22

Court repeatedly noted that a loan survives discharge.  Moreover, the comments regarding the

23

last payment due are in relation to an analysis of the dates related to foreclosure.  They are not

24

the Court's holding.  This is apparently from the pattern of the Court's discussion.

25

In addition, Plaintiff notes that Movant does not have a substantial case for relief in the

26

Appeal.  However, Plaintiff ignores Movant's arguments regarding the fact that pre-emption

27

precludes a finding based upon Washington State law as only Bankruptcy law can control

28

issues related to discharge.  Under Federal law, state courts are pre-empted from enacting laws

Ghidotti | Berger
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

which regulate areas which are exclusively under the jurisdiction of the Federal government. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 213, 103 S. Ct. 1713, 1727, 75 L. Ed. 2d 752 (1983). In this matter, this Court and the cases, upon which it relied, interpreted laws which are the exclusive jurisdiction of the Bankruptcy Code. *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S. Ct. 108, 110, 73 L. Ed. 318 (1929); *Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1201 (9th Cir. 2005). In finding that the statute of limitations began to run with the last payment due prior to Debtor's discharge in 2012, the District Court rewrote what the Bankruptcy Code and case law have established is the result of a Bankruptcy discharge. As discussed at length in the moving papers, the Bankruptcy Court has exclusive jurisdiction on these issues. Further, the Bankruptcy Court has determined that the lien survives without any alternation to the maturity date or the last payment due date. As such, the statute of limitations does not time-bar Franklin and Deutsche Bank from foreclosing or enforcing the terms of the 2nd DOT. Further, Debtor is prevented from quieting title on this basis. Therefore, the District Court erred.

## 2. Movant will be irreparably injured absent a stay.

In response, Plaintiff argues that Movant would not be irreparably harmed because any fee award could be reconsidered or vacated when Movant prevails at the 9th Circuit. However, a Motion to Reconsider or Vacate must be filed within a reasonable time after entry of the order. The process with the 9th Circuit Court will be several more months. As such, the time in which to file the appropriate motion will have passed. At that time, Movant will be left without any recourse. Therefore, Movant will be irreparably harmed.

## 3. Other parties interested in the proceeding will not be injured by the stay.

With regard to this factor, Plaintiff argues that he will be harmed because he will not have sufficient funds to pay his attorneys fees and costs. Unfortunately, that is the risk associated with filing the Adversary and appealing the Bankruptcy Court's decision to this Court. Because a final ruling has not been issued, Movant should not be burdened with the Plaintiff's costs. When Movant prevails at the 9th Circuit, the fees and costs that Movant paid to Plaintiff will then need to be reimbursed. It is in the best interests of all parties for the

Ghidotti | Berger
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Motion for Attorney Fees to be stayed as well as any other proceedings to ensure that a final decision is issued before determining who should be liable for what fees and costs.

**4. The public interest favors a stay.**

As noted in the m moving papers, efficient administration of a case is in the public interest. *In re Gardens* at 832. As such, public interest favors a stay to allow the completion of the appeal, and the stay should be granted.

**B. <u>PAYMENT OF A BOND</u>**

In the Opposition, Plaintiff argues that the stay should be denied because Movant did not offer to pay a bond. That is incorrect. Movant was silent on the issue. If the Court determines that a bond is appropriate, Movant will pay any amounts assessed.

<u>CONCLUSION</u>

FRBP 8007 provides for a stay during the pendency of an appeal. To determine if a stay is appropriate, four factors are to be considered. Movant has met those factors. If the Court determines that a bond is necessary for a stay to be issued, Movant will pay the amount requested.

Wherefore Movant prays for:

1) A stay of all of the proceedings pending the Appeal bearing Case Number 19-35719

2) A stay of a ruling on the Motion for Attorneys' fees; and

3) All other relief the Court deems appropriate.

Dated: 12/12/2019                    Respectfully Submitted,

GHIDOTTI | BERGER LLP

<u>/s/ Kristin A. Zilberstein</u>
Kristin A. Zilberstein, Esq. WSBA #47798
Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1 and Franklin Credit Management Corp.

Reply– Page 4

# EXHIBIT "1"

No. 19-35719

Case No.: 2:19-cv-00207-JCC

Bankruptcy Adversary Case No.: 18-01159

Bankruptcy Case No.: 18-13392

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

IN RE NAZARIO HERNANDEZ, Debtor, Plaintiff.

FRANKLIN CREDIT MANAGEMENT CORPORATION and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS CERTIFICATE TRUSTEE ON BEHALF OF BOSCO CREDIT II TRUST SERIES 2010-1, Defendants, Appellants,

v.

NAZARIO HERNANDEZ, Debtor, Plaintiff - Appellee

---

**Appeal from the U.S. DISTRICT COURT FOR WESTERN WASHINGTON, SEATTLE; Honorable John C. Coughenour**
**Case No. 2:19-cv-00207-JCC**

---

**APPELLANT'S BRIEF**

---

Kristin A. Zilberstein, Esq. (WA Bar No. 47798)
GHIDOTTI | BERGER
1920 Old Tustin Ave.
Santa Ana, CA 92705
Telephone: (949) 427-2010
E-mail: kzilberstein@ghidottiberger.com
Attorney for Appellant

FRANKLIN CREDIT MANAGEMENT CORPORATION and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS CERTIFICATE TRUSTEE ON BEHALF OF BOSCO CREDIT II TRUST SERIES 2010-1

Case 19-35710 10/21/2019 ID: 11507861 DktEntry: 16, Page 2 of 42

I.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant Franklin Credit Management Corporation and Deutsche Bank National Trust Company, as Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1 ("Appellants") are not a wholly-owned subsidiary of any publicly held corporation. Appellants do not have a parent corporation and no publicly held company owns 10% or more of its stock.

Franklin Credit Management Corp. ("Franklin") is a Delaware Corporation with its headquarters located in Jersey City, NJ; it is an independent publicly-traded company with 56% of Franklin's common stock held by Thomas J. Axon, its Chairman and President. No publicly-held corporation owns 10% or more of Franklin's stock.

Deutsche Bank National Trust Company, as Certificate Trustee on behalf of Bosco Credit II Trust Series 2010-1 ("Deutsche Bank") is a national banking association with offices in California. Deutsche Bank Holdings, Inc. has an ownership interest of 10% or in Deutsche Bank. Bosco Credit II Trust Series 2010-1 is a Delaware statutory trust.

Dated: <u>11/21/2019</u>        /s/  <u>Kristin A. Zilberstein_____</u>

## II.

## <u>TABLE OF CONTENTS</u>

I.     RULE 26.1 CORPORATE DISCLOSURE STATEMENT …………….… i

II.     TABLE OF CONTENTS ………………………………………….… ii

III.     TABLE OF AUTHORITIES ……………………………………….. iv

IV.     JURISDICTIONAL STATEMENT ………………………………….. 1

V.     STATEMENT OF ISSUES ………………………………………….... 4

VI.     STATEMENT OF CASE/FACTS …………………………………… 5

VII.     SUMMARY OF ARGUMENT ……………………………………… 9

VIII.     ARGUMENT ……………………………………………………….. 12

     A. STANDARD OF REVIEW…………………………………….... 12

     B. THE COURT ERRED WHEN IT DETERMINED THAT THE
         WASHINGTON STATE STATUTE OF LIMITATIONS AS
         DEFINED BY WASH. REV. CODE § 4.16.040(1) BEGAN TO RUN
         UPON MR. AND MRS. HERNANDEZ DISCHARGE FROM
         BANKRUPTCY CASE 12-14989 WHICH WAS DICHARGED
         AUGUST 15, 2012 …………………………………………... 13

         1.      Overview of the current state of applicable Washington
            State law ……………………………………………….. 13

2.      The Washington State law interpretation of discharge is pre-empted by Federal law ………………………………… 16

     a.  The Washington State law interpretation of discharge is pre-empted by Federal law – secured liens survive discharge …………………………………………... 22

     b.  The Washington State law interpretation of discharge is pre-empted by Federal law – modifications of loan terms is prohibited ………………………………………... 25

     c.  The Washington State law interpretation of discharge is pre-empted by Federal law – payments under the Loan are still due …………………………………………... 29

C.  THE COURT ERRED WHEN IT FOUND THAT *EDMUNDS* v *BANK OF AMERICA, N.A.* WAS NOT *DICTA* …………………... 33

IX.     CONCLUSION …………………………………………………... 38

# III.

## <u>TABLE OF AUTHORITIES</u>

**Cases**

1042 *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) ........................................................................12

187 Wash.2d 1003 (2017) ........................................................................14

221 *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) ........................................................................................................17

*4518 S. 256th, LLC v. Gibbon*, 187 Wash.2d 1003, 386 P.3d 1084 (2017) ...........13

*4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 434–35, 382 P.3d 1 (2016) ............................................................................................13

*4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 436 (2016) ........14

*A.A.C. Corp. v. Reed*, 73 Wash.2d 612, 615 (1968) ...............................................14

*Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) ........................................................................................................16

*Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692, 191 L. Ed. 2d 621 (2015) .........2

*Cannon v. Hawaii Corp. (In re Hawaii Corp.),* 796 F.2d 1139, 1141 (9th Cir.1986) ........................................................................................................2

*Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 434 P.3d 554, 560 (Wash. Ct. App.), <u>review denied,</u> 193 Wash. 2d 1016, 441 P.3d 1200 (2019) ......................14

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 92–93 (4th Cir. 1995)................................26

Citizens' Loan Association v. Boston & Maine Railroad, 196 Mass. 528, 82 N.E. 696, 14 L.R.A.,N.S., 1025, 124 Am.St.Rep. 584, 13 Ann.Cas. 365 ...................30

*Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S. Ct. 773, 779, 116 L. Ed. 2d 903 (1992) ........................................................................................................24

*Dos Caezaz* Corp. at 1490.....................................................................................13

*Edmundson* at 277-278 ........................................................................................13

*Edmundson* at 278................................................................................................15

*Edmundson v. Bank of America*, 378 P.3d 272.....................................................4

*Edmundson v. Bank of America,* 378 P.3d 272 (Wash. Ct. App. 2016)..................9

*Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ........................................................................................................23

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S., at ——, 102 S.Ct., at 3022...............................................................................................17

iv

*Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963) ........................................................17

*Freeman v. Alderson*, 119 U.S. 185, 187, 7 S. Ct. 165, 166, 30 L. Ed. 372 (1886)30

*Freeman v. Alderson*, 119 U.S. 185, 189, 7 S. Ct. 165, 167, 30 L. Ed. 372 (1886)30

*Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) ....................................................................................................16

*Gassert v. Strong*, 38 Mont. 18, 98 P. 497, 500 (1908) .........................................29

*Glassmaker v. Ricard*, 23 Wn. App. 35, 37-38 (1979) ...........................................14

H.R.Rep. No. 95–595, *supra,* at 361." ...................................................................23

*Helms v. Holmes*, 129 F.2d 263, 266 (4th Cir. 1942) ............................................30

*Herzog v. Herzog*, 23 Wash.2d 382, 387-88 (1945) ...............................................13

*Howard Delivery Service, Inc. v. Zurich American Ins. Co.,* 547 U.S. 651, 657, n. 3, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006) ...........................................2

*Humphrey's Ex'r v. United States*, 295 U.S. 602, 627, 55 S. Ct. 869, 874, 79 L. Ed. 1611 (1935) ....................................................................................................37

*In re Blendheim*, 803 F.3d 477, 498 (9th Cir. 2015) .............................................26

*In re Brawders*, 503 F.3d 856 (9th Cir. 2007) .....................................................26

*In re Christian Life Center,* 821 F.2d 1370, 1373 (9th Cir.1987) ..........................12

*In re Comer,* 723 F.2d 737, 739 (9th Cir.1984) ....................................................12

*In re DAK Indus., Inc.,* 66 F.3d 1091, 1094 (9th Cir. 1995) ...................................12

*In re Enewally* at 1173 ........................................................................................26

*In re Enewally*, 368 F.3d 1165, 1171–72 (9th Cir. 2004) .......................................26

*In re Gugliuzza* ....................................................................................................3

*In Re Gugliuzza* ....................................................................................................2

*In re Haque,* 331 B.R. 524 (Bankr.D.Mass.2005) ..................................................30

*In re Henline*, 242 B.R. 459, 465 (Bankr. D. Minn. 1999) ....................................26

*In re Hill*, 440 B.R. 176, 182 (Bankr. S.D. Cal. 2010) ...........................................30

*In re Lakeshore Village Resort, Ltd.,* 81 F.3d 103, 106 (9th Cir.1996) (*Lakeshore* ) ..........................................................................................................................3

*In re Landmark Fence Co., Inc.*, 801 F.3d 1099, 1101 (9th Cir. 2015) ...................2

*In re Landmark Fence Co., Inc.,* 801 F.3d 1099, 1102 (9th Cir. 2015) ...................2

*In re Lee*, 889 F.3d 639, 644 (9th Cir. 2018) ........................................................12

*In re Vylene Enterprises, Inc.,* 968 F.2d 887, 895–96 (9th Cir.1992) ......................3

*Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S. Ct. 108, 110, 73 L. Ed. 318 (1929) ..................................................................................................................18

*Int'l Shoe Co. v. Pinkus,* 278 U.S. 261, 265–66, 49 S.Ct. 108, 73 L.Ed. 318 (1929) ..........................................................................................................................19

*Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66 (1991) ...................................................................................23

*Long v. Bullard,* 117 U.S. 617, 621, 6 S. Ct. 917, 918, 29 L. Ed. 1004 (1886) ......23

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ...................................................................................26

*Orthopaedic Hosp. v. Belshe,* 103 F.3d 1491, 1495 (9th Cir.1997) .......................12

*Owen v. Owen,* 500 U.S. 305, 308–309, 111 S.Ct. 1833, 1835–1836, 114 L.Ed.2d 350 (1991) ...................................................................................23

*Pac. Gas & Elec. Co.* at 220-221 ............................................................................22

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 213, 103 S. Ct. 1713, 1727, 75 L. Ed. 2d 752 (1983)....................................17

*Pifer v. Bank of Am., N.A.,* No. 2:18-CV-606-RSL, 2019 WL 1231735, at *3 (W.D. Wash. Mar. 15, 2019) ...........................................................................15

*Pobreslo v. Joseph M. Boyd Co.,* 287 U.S. 518, 525, 53 S.Ct. 262, 77 L.Ed. 469 (1933) ...................................................................................19

*Rice v. Santa Fe Elevator Corp., supra,* 331 U.S., at 236, 67 S.Ct., at 1155 .........17

Robinson v. Exchange National Bank of Tulsa, Oklahoma, D.C., 28 F.Supp. 244 30

*Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1201 (9th Cir. 2005) ........18

*Soltani v. W. & S. Life Ins. Co.,* 258 F.3d 1038, 1041–42 (9th Cir. 2001) ..............12

*Stellwagen,* 245 U.S. at 615–16, 38 S.Ct. 215 ........................................................19

*United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1490 (9th Cir. 1993)............13

*Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir. 1997) ..............................3

*Weinberg v. Naher*, 51 Wash. 591, 594 (1909) ......................................................14

*Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 784, 239 P.3d 1109 (2010) ..13

*Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000).......12

## Rules

(d)(2)(A)(iii) ............................................................................................................1

28 U.S.C. § 158 (d)(1)............................................................................................1

8002 .........................................................................................................................1

Rules 8001 ...............................................................................................................1

Wash. Rev. Code §4.16.040(1) ...............................................................................4

# IV.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from an order of a District Court judge under 28 U.S.C. § 158 (d)(1) and (d)(2)(A)(iii) upon the filing of a timely notice of appeal in accordance with Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure as well as Federal Rule of Appellate Procedure 6. According to the District Court docket in this case, the order reversing the decision of the Bankruptcy Court's decision on Appellant's Motion to Dismiss Appellee's Adversary proceeding was entered on August 13, 2019 and the notice of appeal was filed, within fourteen (14) days, on August 22, 2019. Appellant's Excerpts of Records ("AER"), Volume 4, at pg. 477. The filing of the notice of appeal complies with Federal Rule of Bankruptcy Procedure 8002 and Federal Rule of Appellate Procedure 6. This Court has authority to hear this appeal from the District Court.

While the order which is the subject of this appeal is not necessarily a final order as the District Court remanded it back to the Bankruptcy Court for proceedings consistent with its ruling, it falls within exceptions applicable to matters in the Bankruptcy Court and where the actions to be taken by the lower court are ministerial in nature. To be appealable as a final order in the Bankruptcy Court the order does not need to resolve the entire Bankruptcy case. It only needs

1

to resolve the discreet dispute being appealed. Accordingly, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.,* 547 U.S. 651, 657, n. 3, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006); *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692, 191 L. Ed. 2d 621 (2015). In addition, the courts have determined that matters in the Bankruptcy Court need a more flexible approach in determining whether an order is appealable: "We have taken a more nuanced and 'flexible' approach to assessing the finality of appeals in bankruptcy cases." *In re Landmark Fence Co., Inc.*, 801 F.3d 1099, 1101 (9th Cir. 2015). "We have held, however, that the fluid and sometimes chaotic nature of bankruptcy proceedings necessitates a degree of jurisdictional flexibility. *See, e.g., Cannon v. Hawaii Corp. (In re Hawaii Corp.),* 796 F.2d 1139, 1141 (9th Cir.1986). *In re Landmark Fence Co., Inc.,* 801 F.3d 1099, 1102 (9th Cir. 2015). If the proceedings were to return to the Bankruptcy Court for further adjudication, the Court would be completing the ministerial task of entering the appropriate orders as there are no factual or legal issues to be determined following the District Court's ruling. *In Re Gugliuzza* recognizes a ministerial exception to final judgment rule where a ruling is not literally final but the only tasks left for the Bankruptcy Court are ministerial in nature. *In re Gugliuzza*, 852 F.3d 884, 889. Here, the District Court has not

entered the precise orders necessary to "alter the status quo or fix the parties rights and obligations" but his ruling has left no ground for the Bankruptcy judge to come to a different conclusion. *Ibid*. As in *In re Gugliuzza*, a decision by this Court would aid the Bankruptcy Court by disposing of all the issues in a single proceeding. *Ibid*.

Furthermore, a four factor test is considered to determine whether the order is appealable, ". . . (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm. *In re Lakeshore Village Resort, Ltd.,* 81 F.3d 103, 106 (9th Cir.1996) (*Lakeshore* ), *citing In re Vylene Enterprises, Inc.,* 968 F.2d 887, 895–96 (9th Cir.1992)." *Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir. 1997). The current matter does not have a risk of piecemeal litigation as all of the facts are final and issues are currently pending before the Court. Judicial economy and efficiency will be best served with a decision in this Court. Otherwise, the parties will return to the Bankruptcy Court for final orders to be entered, and return to this Court at a later date posing the same questions. Because the parties agree as to the facts and the facts are final, no fact finding is taken away from the Bankruptcy Court. Neither side will suffer irreparable harm. The inevitable will be delayed by

awaiting the Bankruptcy Court to enter the appropriate orders. Therefore, the 9th Circuit Court of Appeals has jurisdiction to hear this matter.

# V.

## STATEMENT OF ISSUES

1.      Whether the Court erred in determining that the Bankruptcy Court erred when it found that *Edmundson v. Bank of America*, 378 P.3d 272 was *dicta*.

2.      Whether the Court erred when it determined that the Washington State statute of limitations as defined by Wash. Rev. Code §4.16.040(1) began to run upon Mr. and Mrs. Hernandez discharge from Bankruptcy case 12-14989 which was discharged on August 15, 2012.

   a.   Whether the Court erred in determining that the in rem remedies available to Appellant expired August 1, 2018.

   b.   Whether the Court erred in determining that payments were no longer due and owing following Mr. and Mrs. Hernandez discharge from Bankruptcy case 12-14989 despite the terms of Appellants' Note and Deed of Trust.

   c.   Whether the Court erred in interpreting Washington State law in such a way that Washington State law becomes an impermissible

4

interference with the exclusive Federal authority to determine the impact of a Bankruptcy discharge.

## VI.

## <u>STATEMENT OF CASE/FACTS</u>

FRANKLIN CREDIT MANAGEMENT CORPORATION ("Franklin") is the servicer of the mortgage note held by, and deed of trust assigned to, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR BOSCO CREDIT II TRUST SERIES 2010-1 ("Deutsche Bank").

On or about August 16, 2006, Debtor, Nazario N Hernandez, ("Debtor") executed a Note in favor of WMC Mortgage Corp. in the principal amount of $67,600.00 ("Note"), which is secured by a Deed of Trust ("2nd DOT") recorded against the property commonly known as 31445 West Lake Morton Drive Southeast, Covington, WA 98042 ("Property"). AER, Volume 2, pgs. 70-106. The Deed of Trust was also executed by Alicia Hernandez. *Ibid.* The Note and 2nd DOT and related loan documentation are hereinafter sometimes referred to as the "Loan". The Loan matures on September 1, 2036. *Ibid.* On or about September 26, 2008, WMC Mortgage Corp. transferred all beneficial interests in the Deed of Trust to Franklin. *Ibid.*

The Property is encumbered by a first priority deed of trust executed by Debtor and Alicia Hernandez ("1st DOT"). AER, Volume 2, pgs. 107-179.

5

Deutsche Bank National Trust Company, as Trustee for HIS Asset Securitization
Corporation Trust 2006-HE2, Mortgage Pass-Through Certificates, Series 2006-
HE2 is the current beneficiary of the 1st DOT.  *Ibid.*

On May 10, 2012, Debtor and Mrs. Hernandez filed a voluntary bankruptcy
petition under Chapter 7 of the Bankruptcy Code commencing case No. 12-14989.
On August 15, 2012, Debtor and Mrs. Hernandez received a discharge.

On August 29, 2018, Debtor filed a voluntary petition under Chapter 13 of the
Bankruptcy Code commencing Case No. 18-13392-TWD.  AER, Volume 2, pgs. 7-
12.

The Property is Appellant's primary residence. According to Debtor's own
admission, there is enough equity in the Property to wholly secure Franklin and
Deutsche Bank's lien.   AER, Volume 2, pg. 24-69.  On November 16, 2018
Debtor filed Adversary Proceeding Case No. 18-01159-TWD ("Adversary
Proceeding"), wherein Debtor objected to Franklin and Deutsche Bank's Proof of
Claim, and also sought to avoid their lien.  AER, Volume 2, pgs. 180-185.  The
basis for the avoidance portion was that the Debtor could quiet title due to the
Washington State statute of limitations on the foreclosure by Franklin and
Deutsche Bank having run.  *Ibid.*  Debtor contended that the Washington State
statute of limitations began to run on the entire lien from the date of the last

payment due prior to Debtor's and Mrs. Hernandez's receipt of a discharge in Bankruptcy case No. 12-14989. *Ibid*.

Franklin and Deutsche Bank filed a Motion to Dismiss the Adversary Proceeding ("Motion") on December 27, 2018 because the cases, on which Debtor relied were not applicable, and because the statute of limitations did not begin to run from the payment due immediately prior to the date Debtor received a Chapter 7 discharge. AER, Volume 2, pgs. 186-199. Further, Franklin and Deutsche Bank argued that the Loan passed through the 2012 Bankruptcy without impact to the lien aside from a discharge of Debtor's personal liability. *Ibid*. As a result, Franklin and Deutsche Bank contended that their in rem rights survived which would allow the foreclosure of the Property or the enforcement of the terms of the Loan. *Ibid*. Moreover, Franklin and Deutsche Bank noted that the statute of limitations had not begun to run on August 1, 2012 because payments continue to become due until the date of maturity. *Ibid*.

On December 28, 2018, in an efford to avoid Franklin and Deutsche Bank's Motion, Debtor sought to remove the Adversary Proceeding from the Bankruptcy Court to the jurisdiction of the District Court (the "Removal") because Debtor claimed the Bankruptcy Court would be relying upon Washington State law to make its decision, and because Debtor represented, without declaration or support, that Debtor's non-debtor spouse, a signer on the loan documents, did not consent to

7

jurisdiction of the Bankruptcy Court. AER, Volume 2, pgs. 200-203. Franklin and

Deutsche Bank immediately opposed Removal because the subject of the

Adversary Proceeding was core to the Bankruptcy Court, as admitted in the

Complaint. AER, Volume 2, pgs. 204-208. The Judge's Recommendation

Regarding Removal for Withdrawal of Reference, requested that the District Court

to wait until the hearing on the Motion was held because the Judge would most

likely grant the Motion. AER, Volume 2, pgs. 214-216.

The hearing on the Motion proceeded on February 6, 2019. AER, Volume

3, pgs. 231-256. An Order Dismissing This Adversary Proceeding was entered

February 7, 2019. AER, Volume 3, pgs. 257-258. The Bankruptcy Court

determined that the case upon which Debtor was relying provided the key ruling in

dicta. AER, Volume 3, pgs. 231-256. In addition, the Court determined that

Franklin and Deutsche Bank's in rem rights survive the Bankruptcy discharge, the

Loan had not been accelerated, and the statute of limitations had not run. *Ibid.*

Lastly, the Court found that the last payment due prior to discharge was not the last

payment due on the Loan. *Ibid.*

Debtor appealed the matter to the District Court for the Western District of

Washington on February 11, 2019. AER, Volume 3, pgs. 259-268. Debtor filed

his Opening Brief on May 6, 2019. AER, Volume 4, pgs. 504-507. Franklin and

Deutsche Bank filed their Opening Brief on July 5, 2019. *Ibid.* On August 2, 2019, Debtor filed his Reply Brief. *Ibid*.

The District Court issued its order and decision on August 13, 2019. AER, Volume 1, pgs. 1-6. In its decision, the District Court found that the ruling in *Edmundson v. Bank of America,* 378 P.3d 272 (Wash. Ct. App. 2016), regarding the applicability of the statute of limitations was not *dicta* as the Bankruptcy Court had found. *Ibid.* Further, the District Court held that the statute of limitations ran from the date of the last payment due prior to Debtor's discharge on August 15, 2012. *Ibid*. As a result, Debtor could quiet title because Franklin and Deutsche Bank's ability to enforce the 2nd DOT became time-barred. *Ibid*.

On August 22, 2019, Franklin and Deutsche Bank filed their Notice of Appeal. AER, Volume 4, pg. 477. On August 29, 2019, Franklin and Deutsche filed the Mediation Questionnaire, and Debtor filed his on August 30, 2019. The parties attempted to resolve the matter through the Court's mediation program to no avail.

## VII.

## <u>SUMMARY OF ARGUMENT</u>

This appeal arises from the District Court's Order wherein it reversed the decision of the Bankruptcy Court granting Franklin and Deutsche Bank's Motion

to Dismiss Debtor's Adversary Proceeding. AER, Volume 1, pgs. 1-6. The District Court's holding causes Franklin and Deutsche Bank to lose the ability to enforce the 2nd DOT as being time-barred. However, the ability to foreclose is not time-barred.

Under Federal law, state courts are pre-empted from enacting laws which regulate areas which are exclusively under the jurisdiction of the Federal government. In this matter, the District Court and the cases, upon which it relied, interpreted laws which are the exclusive jurisdiction of the Bankruptcy Code. In finding that the statute of limitations began to run with the last payment due prior to Debtor's discharge in 2012, the District Court rewrote what the Bankruptcy Code and case law have established is the result of a Bankruptcy discharge.

The Bankruptcy Code and related case law have indicated that a lien secured by a debtor's property survives the Bankruptcy discharge. While the debtor is no longer personally liable for that debt, the secured creditor retains its in rem remedies. Furthermore, the Bankruptcy Code and related case law preclude liens from being modified or avoided in Chapter 7 cases. Here, the District Court eliminated Franklin and Deutsche Bank's in rem rights even though those rights survive a Bankruptcy case. The District Court extended the meaning of a discharge to modify the terms of Franklin and Deutsche Bank's Loan such that payments were no longer due following Debtor's discharge. This is simply not the

10

state of the law.  A discharge eliminates a debtor's personal liability, but it does not alter the terms of the underlying loan.  Moreover, the removal of in personam liability does not stop the payments of the loan from becoming due or cause the loan to accelerate.

Under Washington State law, the statute of limitations begins to run from the date that each payment becomes due until the loan has matured or is accelerated. In this matter, the Loan matures September 1, 2036.  AER, Volume 2, pgs. 70-106. As such, the statute of limitations could not have already run on the payment due August 1, 2036.  Because the District Court was pre-empted from altering the meaning of a discharge or modifying the terms of Franklin and Deutsche Bank's Loan, as these are strictly controlled by Federal law related to Bankruptcy, it was pre-empted from concluding that the statute of limitations began to run with the last payment due before Debtor's discharge.  As such, the statute of limitations does not time-bar Franklin and Deutsche Bank from foreclosing or enforcing the terms of the 2nd DOT.  Further, Debtor is prevented from quieting title on this basis.  Therefore, the District Court erred.

# VIII.

# ARGUMENT

## A. STANDARD OF REVIEW

The Bankruptcy Court's factual findings are reviewed for clear error and conclusions of law de novo. *In re Lee*, 889 F.3d 639, 644 (9th Cir. 2018). This applies when a Bankruptcy Court's decision is reviewed by the District Court and appealed to the 9th Circuit. *Ibid*. "The role of the district court and this court are basically the same in the bankruptcy appellate process. *In re Christian Life Center,* 821 F.2d 1370, 1373 (9th Cir.1987). Therefore, we review the bankruptcy court decision directly. *Ibid.* We review the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo. In re Comer,* 723 F.2d 737, 739 (9th Cir.1984)." *In re DAK Indus., Inc.,* 66 F.3d 1091, 1094 (9th Cir. 1995).

> The interpretation and construction of statutes are questions of law reviewed de novo. *See Orthopaedic Hosp. v. Belshe,* 103 F.3d 1491, 1495 (9th Cir.1997). A district court's interpretation of state law is reviewed under the same de novo standard as are questions of federal law. *See *1042 Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The district court's dismissal on statute of limitations grounds presents a question of law reviewed de novo. *See Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000).

*Soltani v. W. & S. Life Ins. Co.,* 258 F.3d 1038, 1041–42 (9th Cir. 2001).

**B.** **THE COURT ERRED WHEN IT DETERMINED THAT THE WASHINGTON STATE STATUTE OF LIMITATIONS AS DEFINED BY WASH. REV. CODE §4.16.040(1) BEGAN TO RUN UPON MR. AND MRS. HERNANDEZ DISCHARGE FROM BANKRUPTCY CASE 12-14989 WHICH WAS DISCHARGED AUGUST 15, 2012**

### 1. Overview of the current state of applicable Washington State law.

An installment note is payable in multiple payments over a designated period. It is essentially saying, "I owe you money in the future at certain designated times." For installment notes, the statute of limitations runs against each installment from the time it becomes due. Every missed payment by the borrower starts its own six-year statute of limitations. *Herzog v. Herzog*, 23 Wash.2d 382, 387-88 (1945); *United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1490 (9th Cir. 1993); *Edmundson* at 277-278. More specifically, the statute of limitations does not begin to run until the payment becomes due. *Dos Caezaz* Corp. at 1490. The last payment owed commences the final six-year period to enforce a deed of trust securing a loan. This situation occurs when the final payment becomes due, such as when the note matures or a lender unequivocally accelerates the note's maturation. *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 434–35, 382 P.3d 1 (2016), *review denied sub nom. 4518 S. 256th, LLC v. Gibbon*, 187 Wash.2d 1003, 386 P.3d 1084 (2017); *see also Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 784, 239 P.3d 1109 (2010).

("Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can be begun within six years of any particular installment default and the amount due can be the then principal amount owing."). Because Allen did not pay the monthly installment amount due on June 1, 2010 or thereafter, the statute of limitations for each missed payment accrued and the six-year statute of limitations began to run on the date the payment was due.

*Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 434 P.3d 554, 560 (Wash. Ct. App.), review denied, 193 Wash. 2d 1016, 441 P.3d 1200 (2019).

If a debt is accelerated, the debt is due immediately, and the statute of limitations runs from the date of acceleration. The Washington Supreme Court has held "that even if the provision in an installment note provides for the automatic acceleration of the due date upon default, *mere default alone will not accelerate the note*." *A.A.C. Corp. v. Reed*, 73 Wash.2d 612, 615 (1968). "'Some ***affirmative action is required; some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due.***'" *Glassmaker v. Ricard*, 23 Wn. App. 35, 37-38 (1979) quoting *Weinberg v. Naher*, 51 Wash. 591, 594 (1909); 4*518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 436 (2016), *review denied*, 187 Wash.2d 1003 (2017) (emphasis added).

In addition to the statute of limitations beginning to run at the foregoing times, it begins to run in relation to events related to Bankruptcy cases. The statute of limitations accrues with the last payment due immediately prior to a debtor's

14

discharge from Bankruptcy[1].  *Edmundson* at 278.  The Court reasoned that no further payments were due on the loan in light of debtor no longer being personally liable.  *Edmundson* at 278.

When the statute of limitations bars a foreclosure, a borrower may initiate an action to quiet title against the lender.  *Pifer v. Bank of Am., N.A.,* No. 2:18-CV-606-RSL, 2019 WL 1231735, at *3 (W.D. Wash. Mar. 15, 2019).  In the circumstance where the statute of limitations has not run, the borrower must show that the obligations under the terms of the note and deed of trust have been satisfied.  *Ibid*.

In this matter, the District Court used this line of cases to conclude that Franklin and Deutsche Bank no longer had the right to enforce the Loan.  AER, Volume 1, pgs. 1-6.  This was based upon the fact that Debtor had received a Bankruptcy discharge on August 15, 2012, and Franklin and Deutsche Bank had not exercised their in rem rights within six years of August 1, 2012.  *Ibid.*  Using *Edmundson*, the District Court found that the last payment due on the 2nd DOT was August 1, 2012.  *Ibid*.  Because Franklin and Deutsche Bank had not foreclosed within six years of August 1, 2012, the District Court held that they were time-barred under the statute of limitations.  *Ibid*.  For the following reasons, Franklin

---

[1] Whether this is in fact the holding in *Edmundson* is at issue herein and addressed in Section C below.  Franklin and Deutsche Bank contend that this is actually *dicta*.  In addition, Franklin and Deutsche Bank maintain that this law is pre-empted by Bankruptcy law as discussed in the remainder of this section.  As such, the last payment due cannot be the payment immediately prior to a debtor's discharge.

and Deutsche Bank argue that the District Court was precluded from its findings as it was pre-empted to do so under Bankruptcy law.  As such, Franklin and Deutsche Bank's ability to enforce their Loan should be restored.

### 2.  <u>The Washington State law interpretation of discharge is pre-empted by Federal law.</u>

The Constitution decreed that the laws of the United States are the supreme law of the land in Article VI, cl. 2 of the Constitution.  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008).  Further where state laws are in direct conflict with federal law, the state law is ineffective.  *Ibid*. In determining whether a statute has pre-emptive effect, the analysis begins with Congressional intent.  *Id.* at 543.  That intent may be found in the precise language of the statute or implied in the structure or purpose of the statute.  *Ibid*.  Even if the statute contains pre-emptive language, the analysis does not end

> . . . because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual *77 conflict between state and federal law. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).  *Ibid.*

In fact the analysis begins with an assumption that state laws are not overridden by Federal laws " '. . . unless that was the clear and manifest purpose of Congress.' "  *Ibid*.  Further, the assumption is particularly strong in a field which was previously only regulated by states.  *Ibid*.  As a result, when a pre-emption

16

clause can have multiple readings, the courts generally interpret the statute in the manner least favorable to pre-emption.  *Ibid.*  In a field where the Federal government is the sole regulator, the test to determine pre-emption is ". . . whether "the matter on which the state asserts the right to act is in any way regulated by the federal government." *Rice v. Santa Fe Elevator Corp., supra,* 331 U.S., at 236, 67 S.Ct., at 1155."  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 213, 103 S. Ct. 1713, 1727, 75 L. Ed. 2d 752 (1983).  "It is well established that state law is preempted if it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *221 Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963); *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S., at ——, 102 S.Ct., at 3022."  *Id.* at 220–21.

In this matter, the conflict is between Washington State law and Bankruptcy law.  In light of the foregoing cases, the analysis begins with a determination of whether the District Court's holding is in a field where the Federal government is the sole regulator.  The answer is yes.  In its ruling, the District Court analyzed and concluded what the meaning of a Bankruptcy discharge is.  However, Bankruptcy law is exclusively an area of law governed by Federal law.  The use of state law is prohibited.

17

It is well settled that Bankruptcy law trumps state law. The power established in Congress to create bankruptcy laws throughout the United States is "unrestricted and paramount." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S. Ct. 108, 110, 73 L. Ed. 318 (1929). Furthermore, it is generally accepted that an intention to exclude state law is not implied. *Ibid*. The intention of Congress is very clear with regard to Bankruptcy law. *Ibid*. "The national purpose to establish uniformity necessarily excludes state regulation." *Ibid*.

> There can be no doubt that federal bankruptcy law is "pervasive" and involves a federal interest "so dominant" as to "preclude enforcement of state laws on the same subject"—much like many other areas of congressional power listed in Article I, Section 8, of the Constitution, such as patents, copyrights, currency, national defense and immigration. The Bankruptcy Clause, which grants Congress the power to make bankruptcy laws, U.S. Const. art. I, § 8, cl. 4, stresses that such rules must be "uniform." Bankruptcy law occupies a full title of the United States Code. It provides a comprehensive system of rights, obligations and procedures, as well as a complex administrative machinery that includes a special system of federal courts and United States Trustees.

*Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1201 (9th Cir. 2005).

States are not permitted to pass laws that interfere with or even compliment the Bankruptcy Code as it causes confusion and inconsistencies. *Int'l Shoe Co.* at 265. In *Int'l Shoe Co.*, the debtor sought a discharge through his local county court rather than the Bankruptcy Court despite the existence of the Bankruptcy Court. *Id.* at 262-264. It was determined that the debtor had done so because he was not

18

eligible for a discharge under the Bankruptcy Code.  *Id.* at 264-265.  The Court

held that anything related to the subject of bankruptcies was exclusive to the

Bankruptcy Act when Congress enacted it.  *Id.* at 266.  In turn, when the

Bankruptcy Act was enacted, it pre-empted all bankruptcy related law enacted by

any of the states or local jurisdictions.  *Ibid.*

      Moreover, the purpose of Bankruptcy law is to avoid situations where

creditors are like piranhas with a feeding frenzy of debts.  *Sherwood* at 1203-1204.

> We know, because the Supreme Court has repeatedly told us, that
> state statutes that purport to perform the first of these functions, by
> giving debtors a discharge of their debts, are preempted. *See Int'l Shoe
> Co. v. Pinkus,* 278 U.S. 261, 265–66, 49 S.Ct. 108, 73 L.Ed. 318
> (1929); *see also Pobreslo v. Joseph M. Boyd Co.,* 287 U.S. 518, 525,
> 53 S.Ct. 262, 77 L.Ed. 469 (1933); *Stellwagen,* 245 U.S. at 615–16,
> 38 S.Ct. 215. That the state discharge statute may be compatible with
> (or even identical to) the federal discharge statute makes no
> difference. Nor does it matter that a creditor may be able to opt out of
> the state insolvency proceeding by commencing an involuntary
> federal bankruptcy proceeding; indeed, according to *Stellwagen,* it
> does not even matter whether a federal bankruptcy act is in effect. *Id.*
> at 615, 38 S.Ct. 215 ("It is settled that a State may not pass an
> insolvency law which provides for a discharge of the debtor from his
> obligations, which shall have the effect of a bankruptcy discharge as
> to creditors in other States, and this although no general federal
> bankruptcy act is in effect."). Such state procedures are preempted
> simply because the ability to grant a discharge is "one of the principal
> requisites of a true bankruptcy law." *Id.* at 616, 38 S.Ct. 215.

*Id.* at 1203.  In *Sherwood*, the Court was tasked with deciding whether a state

statute preventing preferential transfers was pre-empted by Bankruptcy law.  *Id.* at

1200.  The Court held that it must decide whether the state statute was of the nature

"tolerated" by the Bankruptcy Code or if it was within the purview of the Bankruptcy Code. *Id.* at 1201. Because the powers conveyed by the statute being analyzed were not specifically included in the Bankruptcy Code, the Court expanded its review to "…consider the essential goals and purposes of federal bankruptcy law, and then determine whether section 1800 is consistent with them." *Id.* at 1202. In the end, the Court concluded that "Congress has thought carefully about how collective insolvency proceedings are to be conducted and set both substantive standards and elaborate procedural protections to ensure a result that is fair to debtors and creditors alike." *Id.* at 1205-1206. As such, the statute at issue was pre-empted because it was inconsistent with Bankruptcy law. *Ibid*.

In this case, the District Court determined that the statute of limitations on the enforcement of a deed of trust begins to run as of the date of the last payment due prior to a Bankruptcy discharge. AER, Volume 1, pgs. 1-6. In making this decision, the District Court relied on case law which indicates that a Federal court applying Washington State law must do so as the Federal Court believes that the Washington Supreme Court would apply the law. *Ibid.* In order to determine the date from which the statute of limitations began to run, the District Court reviewed Washington State law on the issue. *Ibid.* In doing so, the District Court held that the last payment due was the payment due immediately prior to discharge. *Ibid.* The basis for this determination was *Edmundson*. The District Court held that in

20

*Edmundson* the Court of Appeals Washington, Division 1 Court held that the last payment of a note for which personal liability had been discharged in a Bankruptcy case was the payment due immediately prior to the discharge. *Ibid*.

While it would seem that the application of a statute of limitations would be exclusively state law based, in this matter, it is not because the District Court interpreted Bankruptcy law in determining the date from which the statute of limitations began to run. More specifically, the District Court interpreted the meaning of a Bankruptcy discharge. It did so when it ruled that the Debtor was no longer liable for payments under the Loan as of the date of the discharge. This interpretation falls within the purview of the Bankruptcy Code because it defines what the Bankruptcy Code meant by a discharge, it modified the terms of the Loan on the basis of the discharge which is governed by the Bankruptcy Code, and it defined what the Bankruptcy laws mean by in rem and in personam. However, the case law specifically states that laws consistent with, in conjunction to, or identical to the Bankruptcy Code are pre-empted. Furthermore, in *Sherwood*, the Court specifically addressed the fact that circumstances surrounding discharge are solely within the field of law regulated by the Federal government. *Sherwood* at 1203.

When reviewing a case such as this to determine whether the District Court's actions were pre-empted, it must be determined if the subject at issue was expressly pre-empted by Congress. As discussed above, anything related to

21

Bankruptcy was unambiguously pre-empted. Issues involving a Bankruptcy discharge are within the field of law regulated by the Federal government. As such, the District Court was precluded from reaching the decision that it did. However, to further the analysis and follow the cases above, it must be decided whether the Washington State law is "tolerated" by the Bankruptcy Code and must be examined for consistency with the goals and purposes of the Bankruptcy Code. The Washington State law is not "tolerated" because it expands the meaning of a discharge beyond that found in the Bankruptcy Code and laws. It gives greater meaning to elimination of personal liability. In addition, the Washington State law is not consistent with the Bankruptcy Code or its goals and purposes. The Washington State law unwinds the Bankruptcy laws that allow a loan to pass through the bankruptcy unaffected, prevent the terms of a loan from being modified, and provide for a creditor to collect on a loan through its in rem rights. Thus, the District Court was pre-empted from ruling as it did, and the statute of limitations did not begin to run with the last payment due prior to Debtor's discharge. In turn, Franklin and Deutsche Bank should be allowed to proceed on their in rem rights.

### a. The Washington State law interpretation of discharge is pre-empted by Federal law – secured liens survive discharge.

In *Pac. Gas & Elec. Co.*, the Court noted that state laws cannot be an obstacle to the objectives of Congress. *Pac. Gas & Elec. Co.* at 220-221.

22

Congressional intent was clear in the creation of the Bankruptcy Code that Bankruptcy laws must be "uniform". *Sherwood* at 1201. Washington State is the only state that has state law which indicates that the last payment due on the note is the last payment due prior to a Bankruptcy discharge in relation to installment notes. This is clearly an obstacle to the Congressional intent of uniformity of Bankruptcy laws. Further, the other states have not ventured into this arena as it is exclusively Federal jurisdiction under Bankruptcy laws and pre-emption.

Moreover, the District Court has created exactly the inconsistency that Congress sought to avoid. In 1886, the U.S. Supreme Court held that only personal liability is discharged in Bankruptcy and the right to foreclose is preserved. *Long v. Bullard,* 117 U.S. 617, 621, 6 S. Ct. 917, 918, 29 L. Ed. 1004 (1886). Further, the U.S. Supreme Court extended its decision when it found that personal liability was discharged in a Bankruptcy and the right to foreclose ". . . survives or passes through the bankruptcy. See 11 U.S.C. § 522(c)(2); *Owen v. Owen,* 500 U.S. 305, 308–309, 111 S.Ct. 1833, 1835–1836, 114 L.Ed.2d 350 (1991); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); H.R.Rep. No. 95–595, *supra,* at 361." *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66 (1991).

> Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against

23

> the debtor *in rem.* Indeed, but for the codification of the rule of *Long v. Bullard, supra,* there can be little question that a "discharge" under Chapter 7 would have the effect of extinguishing the *in rem* component as well as the *in personam* component of any claim against the debtor. And because only "claims" are discharged under the Code,[5] the very need to codify *Long v. \*85 Bullard* presupposes that a mortgage interest is otherwise a "claim."

*Johnson* at 2154. In addition, the discharge does not release the real property from the lien. *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S. Ct. 773, 779, 116 L. Ed. 2d 903 (1992). It is clear from these decisions that a lien on real estate survives a Bankruptcy discharge, and state law cannot alter the Bankruptcy laws in this regard. The creditor retains the right to foreclose.

Despite these laws, the District Court eliminated Franklin and Deutsche Bank's right to foreclose because its focus was upon the Washington State laws on the issue rather than the Bankruptcy laws which should have been the focus. If the Bankruptcy laws had been followed or even acknowledged, the Loan would have survived the Bankruptcy discharge of Debtor's prior case. However, the District Court overlooked the fact that Bankruptcy laws pre-empt state laws on these issues. It is understandable that the Washington State laws would govern the issues surrounding the statute of limitations. But, the effect or result or definition of a discharge is exclusively an issue governed by Bankruptcy law. The District Court should have first analyzed the discharge issues pursuant to the appropriate Bankruptcy laws, and then, analyzed that result within the confines of Washington

24

State law.  Therefore, the District Court erred as its actions were pre-empted, and Franklin and Deutsche Bank's ability to pursue their in rem rights survived the discharge and should be restored.

### b. The Washington State law interpretation of discharge is pre-empted by Federal law – modification of loan terms is prohibited.

The District Court compounded the inconsistencies and confusion between state law and Bankruptcy law in that its ruling amounted to a modification of the terms of the Loan.  The ruling indicated that due to the discharge, payments were no longer due on the Loan as of the payment due date immediately prior to discharge.  AER, Volume 1, pgs. 1-6.  However, the Loan has a maturity date of September 1, 2036 with payments due on the first of the month each month leading up to that date.  *Ibid.*  Thereby, the District Court's interpretation of the meaning of discharge amounted to the maturity date of the Loan being accelerated to August 1, 2012.  Not only is this interpretation contrary to the case law regarding discharge, it is also contrary to the Bankruptcy Code and case law regarding modification of the terms of a loan.  Further, it is contrary to Washington State law in that an affirmative action by the lender is required to accelerate a lien.

Generally, the U.S. Supreme Court has warned that new remedies not currently offered in the Bankruptcy Code or elsewhere by Congress for loan modification should not be created by the courts.  *In re Enewally*, 368 F.3d 1165,

1171–72 (9th Cir. 2004). In *In re Robert Brawders*, the 9th Circuit Court upheld

the United States Bankruptcy Appellate Panel of the 9th Circuit's decision and

adopted its ruling where it was determined that a lien passes through a Bankruptcy

discharge leaving the ability to foreclose by the creditor intact. *In re Brawders*,

503 F.3d 856 (9th Cir. 2007). In addition, the 9th Circuit Court held that the

alteration of loan terms cannot be accomplished without due process. *Ibid*. In

order to strip or modify a lien, the debtor must provide sufficient notice. *In re

Enewally* at 1173. Appropriate notice is ". . .'notice "reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections."' *Id.* at 272, 130 S.Ct.

1367 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70

S.Ct. 652, 94 L.Ed. 865 (1950))." *In re Blendheim*, 803 F.3d 477, 498 (9th Cir.

2015). More specifically, ". . . a lien is an interest in property protected by the due

process guarantees of the Fifth Amendment to the United States Constitution." *In

re Henline*, 242 B.R. 459, 465 (Bankr. D. Minn. 1999). As a result, the lienholder

must participate in any proceeding that impacts its interest in the property. *Ibid*.

Further, an affirmative action must be taken to avoid a lien. *Cen-Pen Corp. v.

Hanson*, 58 F.3d 89, 92–93 (4th Cir. 1995). When it applied this reasoning, the

Court stated that the debtors could not exit Bankruptcy with a greater interest in the

property than what they possessed prior to Bankruptcy. *Id*. at 93. In other words,

a ". . . lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding, as discussed above. *Wolf,* 162 B.R. at 106, 108 n. 16." *Id.* at 94.

As with other statutes and case law regarding Bankruptcy related matters, the Bankruptcy Code and its related cases are the exclusive basis for modifying the terms of a loan in conjunction with a Bankruptcy discharge. Such modifications require the appropriate notice and an adversary proceeding. That proceeding must have the participation of the affected creditor. In addition, the Courts have determined that a loan cannot be stripped or modified in a Chapter 7 Bankruptcy case. Here, the District Court modified the Loan to advance the maturity date from September 1, 2036 to August 1, 2012 based upon Washington State law without notice to Franklin and Deutsche Bank and without an adversary proceeding as a result of Debtor's discharge. This is simply not permissible under pre-emption. Nor is it permissible under Bankruptcy laws. Moreover, nothing in the Bankruptcy Code or related case law indicates that a discharge amounts to the maturity date of a loan being advanced to the payment due immediately prior to the discharge. In fact, the Bankruptcy Code and case law indicate that the discharge allows the loan to remain intact allowing the creditor to proceed in rem on its rights. This is the opposite of what the District Court determined.

A discharge does not mean that the maturity date of a loan changes (accelerates), nor does a discharge allow such a modification of loan terms without the debtor or court following the proper procedures (i.e. due process and an adversary). A discharge does not mean that the in rem rights of the creditor end. To the contrary, the Bankruptcy laws have stated that a lien survives a Bankruptcy discharge allowing a creditor to pursue its in rem rights. Thus, the Loan maturity date was not and could not be advanced to August 1, 2012. Franklin and Deutsche Bank should have had the ability to foreclose based on their in rem rights. In addition, with the last payment due under the Loan not actually coming due until September 1, 2036, the statute of limitations could not begin to run on August 1, 2012, and Franklin and Deutsche Bank's ability to enforce the terms of the Loan are not time-barred.

Furthermore, the District Court has given the Debtor a greater interest than what he possessed prior to the 2012 Bankruptcy which is contrary to the policy espoused by the Court. More specifically, the District Court's ruling shortened the Loan term by twenty-four years. This also amounted to an acceleration of the Loan which started the clock ticking on the statute of limitations earlier than if the District Court adhered to Bankruptcy law or even Washington Law where an affirmative action by the **lender** is required. In turn, Franklin and Deutsche Bank were denied their Fifth Amendment rights. As such, the District Court violated

Bankruptcy laws in making its ruling. Therefore, pre-emption prevents the District Court from using state law to make its decision, and Franklin and Deutsche Bank's ability to enforce the 2nd DOT should be returned.

### c. **The Washington State law interpretation of discharge is pre-empted by Federal law – payments under the Loan are still due.**

In addition to creating inconsistencies in the meaning of a discharge and the effect of a discharge on the loan terms, the District Court created inconsistencies with what is meant by in rem and in personam in the treatment of secured loans after a Bankruptcy discharge. Because of this confusion, the District Court erroneously determined that payments were no longer due after August 1, 2012 on the Loan. Furthermore, the District Court was precluded from creating this confusion and inconsistency by pre-emption because Bankruptcy laws are the only laws which are to be utilized in interpreting the outcome of a discharge from a Bankruptcy case.

In personam is a proceeding where the form and substance of the action is between parties each claiming a right. *Gassert v. Strong*, 38 Mont. 18, 98 P. 497, 500 (1908). The judgment from an in personam case binds the debtor. *Ibid*. In rem is an action against a thing or subject matter rather than a person. *Ibid.* Encompassed in in rem are actions for the enforcement of a deed of trust or other

similar liens. *Id* at 501. These are actions where the property itself is treated as responsible. *Freeman v. Alderson*, 119 U.S. 185, 187, 7 S. Ct. 165, 166, 30 L. Ed. 372 (1886). ". . . [T]he only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff." *Freeman v. Alderson*, 119 U.S. 185, 189, 7 S. Ct. 165, 167, 30 L. Ed. 372 (1886).

Applying these definitions to the Bankruptcy Code, it has been held that a discharge eliminates the debtor's in personam or personal liability. *In re Blendheim* at 494. While the discharge releases the in personam liability, it does not impact the lien. *Ibid*. Because the in rem rights remain, they can be a claim in a future Bankruptcy case. *In re Hill*, 440 B.R. 176, 182 (Bankr. S.D. Cal. 2010). "In other words, *Johnson* concluded the mortgage debt simply changes character from recourse to non-recourse because of the discharge. *Id.* at 82–84, 111 S.Ct. 2150. *See also In re Haque,* 331 B.R. 524 (Bankr.D.Mass.2005)." *Ibid*. This reasoning is explained in more simple terms with the proposition that ". . . a discharge in bankruptcy is neither a payment nor an extinguishment of debts. It is simply a bar to their enforcement by legal proceedings. Robinson v. Exchange National Bank of Tulsa, Oklahoma, D.C., 28 F.Supp. 244; Citizens' Loan Association v. Boston & Maine Railroad, 196 Mass. 528, 82 N.E. 696, 14 L.R.A.,N.S., 1025, 124 Am.St.Rep. 584, 13 Ann.Cas. 365." *Helms v. Holmes*, 129 F.2d 263, 266 (4th Cir. 1942). When it determined the validity of lien stripping,

30

the U.S. Supreme Court acknowledged that ". . . a lien on real property passed through bankruptcy unaffected." *Dewsnup* at 418. In addition, the U.S. Supreme Court unambiguously stated that "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment". . ." *Johnson* at 2154.

In this matter, the District Court used Washington State law to interpret the extinguishment of personal liability or in personam to mean payments were no longer due on the Loan. However, the District Court was prevented from using Washington State law to interpret discharge in such a way. Under pre-emption, the District Court was required to employ Bankruptcy law in its interpretation process.

When Bankruptcy law is utilized, a drastically different outcome results. With regard to in personam and in rem, the cases are very specific in their definitions. In each case where in personam was analyzed, the courts determined that the personal liability of the debtor ended with the discharge, and the discussion with regard to in personam ended with that conclusion. The release of the debtor's liability is not equated with the maturity date of the loan being accelerated to the discharge date or with the payments of the loan no longer becoming due. Instead, the courts specifically indicate that the payments are due, but the creditor cannot pursue the debtor for those payments. An inability to pursue the debtor for

31

payments personally is not equivalent to payments no longer being due on the loan. The payments still come due, but the creditor cannot seek a recourse from the debtor.

Once the cases concluded their discussion of in personam, they turned their attention to in rem. None of the definitions of in rem stand for a change in the underlying loan terms. In addition, when the various courts applied the definition of in rem, none of the cases resulted in the loan terms being altered or payments no longer becoming due. Although *Dewsnup* found that liens could be stripped or made unsecured, that decision was not based upon the definition of in rem. That finding was based upon other provisions in Bankruptcy law specific to Chapter 13 cases. As with in personam, the creditor's limitation to only enforce its loan against the property is not equivalent to payments no longer being due under the loan. Moreover, the cases are all consistent in that the payments are still due and come due.

Here, the proper application of in rem and in personam is very important. As it stands, Franklin and Deutsche Bank had the last payment of the Loan become the payment due immediately before discharge because the District Court rewrote what in rem and in personam mean in a Bankruptcy context. This has resulted in the statute of limitations running and extinguishing their ability to enforce the

32

terms of the Loan. If the Bankruptcy laws were applied instead of superseded by Washington State law, the Proof of Claim of Franklin and Deutsche Bank would be paid through the current Chapter 13 Plan. Generally, the in rem rights would remain intact and the claim would be allowed to be treated in a subsequent Bankruptcy case. Thus, the District Court erred in determining that payments were no longer due after the payment due immediately prior to discharge, and Franklin and Deutsche Bank's ability to enforce the Loan should be restored.

### C. <u>THE COURT ERRED WHEN IT FOUND THAT *EDMUNDSON v. BANK OF AMERICA, N.A.* WAS NOT *DICTA*</u>

At the core of this proceeding is the holding of the Court in *Edmundson*. Debtor and the District Court believe that the portion of the ruling in *Edmundson* where the Court indicated that payments were no longer due on the loan because of the discharge of the debtor in 2012 is not *dicta*. However, it is.

In the first paragraph of *Edmundson*, the primary issue is identified as whether the discharge of a debtor's personal liability also discharges the deed of trust and note. *Edmundson* at 273. Immediately, the question is answered that ". . . a lien is not discharged and remains enforceable after such a discharge." *Ibid.* The secondary issue is identified as whether the enforcement of the loan was timely. *Ibid.* Then, the Court provides a recitation of the facts. *Id.* at 273-274. Before diving into an analysis of the law, the Court summarizes the lower Court's

ruling that a Bankruptcy discharge results in the discharge of the deed of trust, and

immediately finds that, "As a matter of law, this was error." *Id.* at 274.

In the beginning of the analysis, the Court notes:

The United States Supreme Court has made clear the relationship
between a deed of trust[4] or mortgage and a discharge of debt in
bankruptcy. In <u>Johnson v. Home State Bank</u>, the Supreme Court
stated:
¶ 14 A mortgage is an interest in real property that secures a creditor's
right to repayment. But unless the debtor and creditor have provided
otherwise, the creditor ordinarily is not limited to foreclosure on the
mortgaged property should the debtor default on his obligation; rather,
the creditor may in addition sue to establish the debtor's in personam
liability for any deficiency on the debt and may enforce any judgment
against the debtor's assets generally. ***A defaulting debtor can protect
himself from personal liability by obtaining a discharge [through
bankruptcy]. However, such a discharge extinguishes only "the
personal liability of the debtor." Codifying the rule of <u>Long v.
Bullard</u>, the [Bankruptcy] Code provides that a creditor's right to
foreclose on the mortgage survives or passes through the
bankruptcy.***

*Id.* at 275. As it applied the case law to the facts, the Court noted that a creditor's

right to enforce its lien survives the Bankruptcy unless the lien was avoided or

eliminated. *Ibid*. Because the debtor's lien was not avoided or eliminated, the

Court determined that it survived the Bankruptcy leaving intact the right to

foreclose. *Ibid*. The very next step that the Court took was to hold that the lower

court erred in light of this "settled law". *Ibid*. Further, the Court expanded this

holding stating that there was no authority for the legal conclusion that a deed of

trust became unenforceable with the Bankruptcy discharge. *Ibid.* Next, the Court considered the Washington Deeds of Trust Act noting that nothing in the act or secondary sources provides for a Bankruptcy discharge to eliminate enforceability of the lien. *Id.* at 275-276. Again, the Court determined that the lower court failed to understand the law in that the elimination of personal liability did not also eradicate the ability to foreclose. *Id.* at 276. Practically speaking, the Court could not comprehend the equity or logic of handing the Edmundsons title to the property without repaying the loan and wiping out the creditor's only recourse (foreclosing on the property). *Ibid.* Before analyzing the statute of limitations, the Court summarizes its holding, ". . . nothing in this record and nothing under either federal or state law supports the conclusion that the discharge of personal liability on the note also discharges the lien of the deed of trust securing the note. The deed of trust is enforceable." *Ibid.*

Then, the Court analyzed the statute of limitations. It rejected a case relied upon by the lower court because it did not apply. *Id.* at 276-277. That case did not apply because it related to demand notes rather than promissory notes. *Id.* at 277. Further, the Court reviewed the Deed of Trust Act in relation to actions taken by the creditor to resort to remedies found therein. *Ibid.* It determined that such actions were taken and the statute of limitations had not run at that point. *Ibid.* At the end of this review, the Court stated, "[t]hat is all that is required under the

35

circumstances of this case." *Ibid.* Meaning no further analysis is needed to
determine whether foreclosure could proceed and whether the statute of limitations
had run. Even though the Court had made its decision, it proceeded to calculate
whether the statute of limitations had run based upon the relevant dates in the case.
*Id*. at 277-278. In this section of the case, the Court listed the appropriate dates.
*Id*. at 278. The related description stated,

> . . . the statute of limitations for each subsequent monthly payment
> accrued on the first day of each month after November 1, 2008 until
> the Edmundsons no longer had personal liability under the note. They
> no longer had such liability as of the date of their bankruptcy
> discharge, December 31, 2013. Thus, from December 1, 2008 through
> December 1, 2013, the statute of limitations accrued for each monthly
> payment under the terms of the note as each payment became due.

*Ibid*. The remainder of the analysis involves the statute of limitations as it relates
to a purported acceleration of the loan. *Ibid*. As with the discussion regarding the
effect of the discharge on the ability to foreclose, the Court summarized its holding
regarding the statute of limitations and acceleration. *Ibid*. Specifically, the Court
determined that the statute of limitations had not run and the loan was not
accelerated. *Ibid*.

At first glance, the language quoted above where the Court calculates the
statute of limitations, appears to be a confirmation that the last payment due on the
loan became due with the payment prior to discharge. However, it is not. The
court merely recites the applicable dates related to the statute of limitations. The

holding on the issue of the Bankruptcy discharge and its impact on the

enforceability of the lien thereafter had already been rendered earlier in the

opinion. Unfortunately, the Court's description of the dates amounts to a poor

choice of words that imply, at best, that the last payment due on the loan was the

payment immediately prior to the discharge.

Pursuant to Mirriam-Webster Dictionary 2019, d*ictum* or plural *dicta* is "a

judge's expression of opinion on a point other than the precise issue involved in

determining the case." *Dicta* may be followed if persuasive but is not controlling.

*Humphrey's Ex'r v. United States*, 295 U.S. 602, 627, 55 S. Ct. 869, 874, 79 L. Ed.

1611 (1935). In light of the fact that the Court clearly held that a creditor may

enforce its in rem rights following a Bankruptcy discharge, the language where the

Court purportedly concluded that payments were no longer due on the loan

because of the discharge can be nothing other than *dicta*. Moreover, this *dicta*

is contrary to the Court's holding and conclusions earlier in the case, and cannot be

controlling. The Court would not have gone to the extensive lengths that it did in

analyzing the case and the law to have two different sections of its ruling

contradict each other. Further, the Court repeatedly stated that a foreclosure could

occur following a Bankruptcy discharge; it simply does not make sense that it

would reverse itself a page later. Therefore, the District Court erred when it held

that *Edmundson* was not *dicta*. A lien survives a Bankruptcy discharge entitling

37

the creditor to its in rem rights to pursue foreclosure.  As such, Franklin and
Deutsche Bank have the right to enforce the Loan.

## IX.

## CONCLUSION

Franklin and Deutsche Bank's rights under the 2nd DOT are not time-barred.
The actions by the District Court were pre-empted by Bankruptcy law as the issue
of discharge is exclusively one within the purview of the Bankruptcy Court.
Specifically, the fact that a note and deed of trust survives a discharge pre-empts
the District Court's holding.  In addition, the Bankruptcy laws pre-empted the
District Court from altering the terms of the Loan by accelerating the date of
maturity.  This is also precluded by Washington State law in that an acceleration of
a lien is accomplished by an affirmative action of the lender.  Further, the
Bankruptcy laws pre-empted the meaning of in rem and in personam from being
distorted to mean that the last payment due on the Loan was the last payment due
prior to Debtor's discharge.  As such, the District Court erred when it found that
the last payment due on the Loan was the payment immediately before Debtor's
discharge, and that Franklin and Deutsche Bank's rights to enforce the 2nd DOT
were time-barred.

38

Moreover, the District Court erred when it held that *Edmundson* was not *dicta*. Because the *Edmundson* Court found throughout the opinion that a lien survives a Bankruptcy discharge and remains enforceable in rem, it was impossible to find that one sentence which was intended to be a discussion of the calculation of the statute of limitations reversed the Court's holding earlier in the decision. Thus, the portion of the *Edmundson* ruling which states that the last payment due on a lien is the last payment immediately before a Bankruptcy discharge is *dicta* and cannot be controlling. Therefore, the Loan of Franklin and Deutsche Bank remains enforceable in rem.

Based upon the foregoing, Franklin and Deutsche Bank respectfully requests this Court reverse the District Court Order wherein it reversed the decision of the Bankruptcy Court granting Franklin and Deutsche Bank's Motion to Dismiss Debtor's Adversary proceeding.

Dated: November 21, 2019  GHIDOTTI | BERGER LLP

       /s/ Kristin A. Zilberstein
       Kristin A. Zilberstein, Esq.
       Counsel for FRANKLIN CREDIT
       MANAGEMENT CORPORATION and
       DEUTSCHE BANK NATIONAL TRUST
       COMPANY, AS CERTIFICATE TRUSTEE ON
       BEHALF OF BOSCO CREDIT II TRUST SERIES
       2010-1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____19-35719_____

I am the attorney or self-represented party.

**This brief contains** __10,106_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ Kristin A. Zilberstein_____ **Date** _____11/21/2019_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/18*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** 19-35719

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

APPELLANT'S BRIEF; APPELLANT'S EXCERPTS OF RECORD –
APPENDIX – VOLUME 1; APPENDIX – VOLUME 2; APPENDIX –
VOLUME 3; APPENDIX – VOLUME 4;

**Signature** _/s/ Jeremy Romero_____ **Date** __11/21/2019_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 15** *Rev. 12/01/18*

CERTIFICATE OF SERVICE

On 12/12/2019, I served the foregoing documents described as REPLY TO RESPONSE TO AMENDED MOTION FOR STAYPENDING APPEAL on the following individuals by electronic means thorugh the Court's ECF program:

COUNSEL FOR DEBTOR

Jacob Daniel DeGraaff

mainline@hdm-legal.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Jeremy Romero

Jeremy Romero

On 12/12/2019, I served the foregoing documents described as REPLY TO RESPONSE TO AMENDED MOTION FOR STAYPENDING APPEAL on the following individuals by depositing true copies thereof in the United States mail at Santa Ana, California enclosed in a sealed envelope, with postage paid, addressed as follows:

DEBTOR/PLAINTIFF/APPELLANT/APPELLEE

Nazario Hernandez

31445 W. Lake Morton Dr. SE

Kent, WA 98042

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Jeremy Romero

Jeremy Romero

Reply– Page 5

Ghidotti | Berger
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010